# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

CHRISTY MONTOTO
    *Plaintiff,*

v.

WOUNDED WARRIOR PROJECT, INC.
    *Defendant.*

Civil Action No.: _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Christy Montoto, by and through her undersigned attorney, files this complaint against the Defendant, WOUNDED WARRIOR PROJECT, INC. ("WWP") and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1. This court has jurisdiction over this action under 42 U.S.C. § 12181, et. seq., hereinafter referred to as the "ADA". This Court is vested with jurisdiction under 28 U.S.C. §1331 and § 343.

2. Venue is proper in the Middle District of Florida pursuant 28 U.S.C. § 1391 (b)(2) in that the Defendant resides in this judicial district having its principal place of business in Jacksonville, Florida and further, a substantial part of the events or omissions giving rise to the claim occurred in Jacksonville, Florida.

1

3. Venue is proper in the Middle District of Florida pursuant to Age Discrimination in Employment Act of 1967 ("ADEA").

4. Plaintiff is a resident of Harnett County, North Carolina and was employed by Defendant WWP in the Fayetteville, North Carolina office.

5. Plaintiff began her employment with WWP on August 23, 2021, as a National Service Officer I. Plaintiff was terminated from employment on January 17, 2024.

6. WWP is a charity and Veteran service organization with its principal office and place of business in Jacksonville, Florida. It was and is an employer as envisioned by the ADA.

7. Plaintiff's duties while employed by WWP was to represent Veterans and service members in their VA disabilities claims under the Wounded Warrior Project's Veteran Service Organization accreditation granted by the U.S. Department of Veterans Affairs.

8. Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## EEOC CHARGES

9. On November 6, 2023, the Plaintiff filed her first timely charge of discrimination (Charge No. 443-2024-00513) with the United States Equal Employment Opportunity Commission ("EEOC"), naming WWP as respondent.

10. On January 16, 2024, the Plaintiff filed a second complaint of discrimination (Charge No. 443-2024-00513) with the United States Equal Employment Opportunity Commission ("EEOC"), naming WWP as respondent.

11. On January 20, 2024, the Plaintiff filed a third charge of discrimination (Charge No. 443-2024-00513) with the United States Equal Employment Opportunity Commission ("EEOC"), naming WWP as respondent.

12. In Plaintiff's charges of discrimination, Plaintiff alleged, among other things, that she was discriminated against based on disability, age, sex, and was retaliated against for asserting her rights.

13. The EEOC investigated the charges against WWP and issued a Right to Sue letter on February 13, 2024, for the above referenced charge number. Said letter was received by Plaintiff on February 20, 2024.

14. The North Carolina Department of Commerce Division of Employment Security determined that the Plaintiff's employment discharge was *not* for misconduct connected to her work.

## FACTUAL ALLEGATIONS

15. WWP employs over 1000 individuals and represent that they provide equal employment opportunities to individuals with disabilities in full compliance with federal, state, and local laws, such as the Americans with Disabilities Act and does

3

not discriminate against qualified job applicants and teammates with known physical or psychological disabilities in any employment practice.

16. In addition, WWP states that it will provide qualified individuals with reasonable accommodation to assist them in performing the essential functions of their job and additionally, will not discriminate based on age.

17. WWP prohibits retaliation against any employee who in good faith files a complaint or assists with an investigation.

18. In November 2021 the Plaintiff notified her then Regional Director, Angie Silenzi, that she had discovered a lump in her breast and provided dates for upcoming medical testing.

19. Between November 23, 2021, and November 24, 2021, the Plaintiff underwent a mammogram, ultrasound and biopsy.

20. In December 2021 Plaintiff was diagnosed with breast cancer for which she would undergo surgery, chemotherapy, and radiation as well as a host of other diagnostic procedures and rehabilitative therapy. Plaintiff immediately advised Angie Silenzi of WWP of this diagnosis.

21. Further, Plaintiff's cancer diagnosis was reported to former CEO Mike Lennington, Chief of Staff Chris Toner, Chief Program Officer Jennifer Silva, and National Director Mike Stoddard of the WWP.

22. On December 6, 2021, Plaintiff began a grueling year of cancer treatment including surgery, chemotherapy, radiation and a myriad of other diagnostic and rehabilitative procedures.

23. Despite these physical and emotional challenges, the Plaintiff received excellent employee evaluations for the 2021 and 2022 fiscal years wherein she met expectations overall and exceeded in several sub-categories.

24. Due to the diagnosis, and the fact that Plaintiff was immuno-compromised, the Defendant allowed Plaintiff to work remotely on a full-time basis temporarily.

25. In May 2023 Plaintiff was assigned a new Regional Director, Mike Lowry.

26. On September 26, 2023, the Plaintiff was informed that her cancer had likely returned. The Plaintiff advised her Manger, Cory Fletcher of WWP of this that same day.

27. That same day Regional Director Mike Lowry and manager Corey Fletcher, with the approval of WWP leadership, implemented a 60-day retroactive investigation into the Plaintiff's office attendance.

28. The Plaintiff also had an ultrasound that day for which she received permission to attend.

29. On October 26, 2023, the Plaintiff was called into a meeting with her manager, Corey Fletcher, and the Regional Director Mike Lowry wherein she was issued a

written reprimand for not being in the office and for violation of the hybrid work policy, and violation of the corporate card policy.

30. The reprimand referenced dates when the violations occurred, however, these allegations were unfounded. For example, she was cited for not being in the office August 31, 2023. However, the office was closed for a hurricane.

31. The Plaintiff was also reprimanded for not being in the office on September 26, 2023, the date she had received permission to attend the ultrasound.

32. The reprimand also cited a meeting between the Plaintiff and her Regional Director Mike Lowry and leadership that allegedly occurred on June 28, 2023, that addressed the impact of the Plaintiff not being present in the office. This meeting never occurred. In fact, the Plaintiff was moving that day and WWP was aware of her inability to attend the meeting well in advance thereof.

33. The reprimand cited the Plaintiff for violating the corporate credit card policy when she mistakenly used the card for a personal charge.

34. Plaintiff timely submitted her expense report for same and selected the pre-approved mistaken/personal option as the basis for an expense.

35. Plaintiff timely repaid the expense.

36. It came to light that male National Director Mike Stoddard mistakenly used his corporate card for a personal expense. He was not issued a written reprimand for this violation.

37. This written reprimand by WWP evidenced that it refused to provide reasonable accommodations for the Plaintiff's physical disability, and instead was a concocted pretext used for her eventual termination.

38. The effect of this written reprimand was that it deprived the Plaintiff of being eligible for promotion for twelve (12) months.

39. This discriminatory conduct by the WWP negatively affected the Plaintiff's advancement at WWP.

40. On October 27, 2023, the Plaintiff informed WWP of her intention to file an EEOC complaint.

41. At a meeting On November 3, 2023, the Plaintiff was reprimanded by her manager, Corey Fletcher, for allegedly allowing tasks to become late. This meeting was scheduled just after the Plaintiff informed WWP of the fact that she was filing an EEOC complaint.

42. However, Regional Director Mike Lowry had advised that these tasks were not requirements and were merely "self-reminders."

43. The Plaintiff was being singled out for something that was not even a violation in a pretextual effort to build a case for termination.

44. On November 6, 2023, the Plaintiff filed her EEOC complaint based upon disability, sex, and age discrimination for asserting her rights.

45. On November 8, 2023, the Plaintiff received a poor performance evaluation despite having a 100% customer satisfaction score and a 97% quality assurance score.

46. On November 14, 2023, Regional Director Mike Lowry held a meeting herein he advised that tasks were optional and not required.

47. Further, the performance evaluation cited comments from 2 *anonymous* teammates regarding Plaintiff's office attendance. Regional Director Mike Lowry refused to provide the identity of these teammates.

48. On December 21, 2023, WWP's regional director held a meeting with the Plaintiff where she was reprimanded again for late tasks, even though they were not required to be completed as indicated above. Notably, the Plaintiff was the only member of her team that was singled out and required to meet in person with Regional Director Mike Lowry to discuss her evaluation.

49. On January 9, 2024, a team meeting was conducted by Regional Director Mike Lowry wherein he acknowledged and gave praise to teammate Vincent Roberson for winning the best Christmas cubicle decoration of the year. The decoration praised was of a homeless Veteran at Christmastime.

50. At the same team meeting Regional Director Mike Lowry appointed a less experienced, and under the age of 40, employee to the more prestigious position of

National Service Officer II, despite that the Plaintiff had trained her and has more than 17 years of experience as an attorney.

51. Regional Director Mike Lowry's long-lasting harassment, offensive conduct, and intimidation tactics created a hostile work environment.

52. On January 10, 2024, while the Plaintiff was on sick leave, Regional Director Mike Lowry began to set tasks on cases for her to complete. The next day the Plaintiff went to Human Resources and complained that the director was engaging in intimidation tactics and creating a hostile work environment.

53. On January 11, 2024, the Plaintiff, via email, questioned the data entry requirements of the WWP. The Plaintiff pointed out that the WWP was overstating the financial number of benefits WWP obtained for Veterans. The information WWP disseminated to Congress, donors, WWP Board of Directors, the public, Veterans and service members was false.

54. On January 16, 2024, while the Plaintiff was on approved sick leave, Vice President Tom Kastner requested a meeting with Plaintiff regarding the January 11, 2024, email sent by Plaintiff.

55. On January 16, 2024, the Plaintiff filed her second EEOC complaint based upon disability, sex, age, hostile work environment, misclassification, and continued retaliation for asserting her rights.

56. As a result of the Plaintiff exercising her rights the Vice President Tom Kastner scheduled a meeting on January 17, 2024, with the Plaintiff. The Plaintiff again received a reprimand for late tasks at this meeting.

57. At this meeting the Vice President Tom Kastner Tom Kastner discussed the EEOC complaints. The Plaintiff advised that as the result of her treatments she needs double knee replacements as well as a host of other medical treatments. Forty-five (45) minutes later the Plaintiff was terminated for gross insubordination.

58. On January 20, 2024, the Plaintiff filed her third EEOC complaint for discrimination based upon disability, sex, age, hostile work environment, misclassification, wrongful termination, and continued retaliation for asserting her rights.

59. The right to sue letter issued by the EEOC to the Plaintiff was received by the Plaintiff less than 90 days from the filing of this action.

## COUNT I

## VIOLATION OF ADA, AS AMENDED

60. The Plaintiff incorporates by reference Paragraphs 1-58 of this Complaint as though fully set forth below.

61. At all relevant times, the Plaintiff was an individual with a perceived disability within the meaning of the ADA.

62. The Plaintiff has perceived physical and psychological impairments that would substantially limit one or more major life activities and body functions, has a record of the impairment, and is regarded by the Defendant as having such impairments.

63. The Plaintiff is a qualified individual as the term is defined in the ADA.

64. The Plaintiff is an individual who, with or without reasonable accommodation, at all relevant times could perform the essential functions of her job with The Wounded Warrior Project.

65. At all material times, the Plaintiff was an employee and WWP was her employer covered by and within the meaning of the ADA.

66. WWP acknowledged the Plaintiff to have a disability which qualifies under the ADA.

67. WWP discriminated against the Plaintiff with respect to the terms, conditions, and privileges of employment because of her perceived disability.

68. WWP conducted itself with malice and reckless indifference to the Plaintiff's federally protected rights.

69. WWP discriminated against the Plaintiff in violation of the ADA by interfering with her enjoyment of all benefits, privileges, terms, and conditions of her employment.

70. The conduct of WWP altered the terms and conditions of the Plaintiff's employment and as such the Plaintiff suffered negative employment action in the form of discipline and termination.

71. As a direct and proximate result of the violations of the ADA, as referenced and cited herein, the Plaintiff has lost all the benefits and privileges of her employment and has been substantially and significantly injured in her career path that was anticipated from her employment.

72. As a direct and proximate cause of the Defendant's actions, the Plaintiff has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, psychological and emotional distress.

73. The Plaintiff has exhausted her administrative remedies, and this count is timely brought.

    **WHEREFORE,** Plaintiff requests trial by jury of all issues so triable as of right, and:

    i. Injunctive relief directing the Defendant to cease and desist from all disability discrimination of all employees;

    ii. Back pay and all other benefits, prerequisites and other compensation for employment which Plaintiff would have

received had she maintained her position with Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi. Reasonable attorney's fees plus costs;

vii. Compensatory damages, and;

viii. Such other relief as this Court shall deem appropriate.

## COUNT II

## VIOLATION OF THE ADA-RETALIATION

74. Plaintiff incorporates by reference Paragraphs 1-58 of this Complaint as though fully set forth below.

75. Following the Plaintiff's objection to disability discrimination, WWP retaliated by altering the terms and conditions of her employment, and by terminating the Plaintiff.

76. The Plaintiff's objection to disability discrimination constitutes a protected activity because such objections were in furtherance of rights secured to her by law.

77. Said protected activity was the proximate cause of WWP's negative employment actions against the Plaintiff including changed working conditions, discipline, and ultimately termination.

78. Instead of ceasing its disparate treatment based upon disability, WWP retaliated against the Plaintiff via changed working conditions, discipline, and termination.

79. The acts, failures to act, practices and policies of WWP set forth above constituted retaliation in violation of ADA.

80. As a direct and proximate result of the violations of the ADA, as referenced and cited herein, the Plaintiff has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

81. As a direct and proximate result of the violations of the ADA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against her, the Plaintiff is entitled to all relief necessary to make her whole as provided for under the ADA.

82. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered damages, including but not limited to, a loss of employment opportunities,

loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, psychological and emotional distress.

83. The Plaintiff has exhausted her administrative remedies, and this count is timely brought.

**WHEREFORE,** Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Injunctive relief directing the Defendant to cease and desist from all disability discrimination of all employees;

ii. Back pay and all other benefits, prerequisites and other compensation for employment which Plaintiff would have received had she maintained her position with Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi. Reasonable attorney's fees plus costs;

vii. Compensatory damages, and;

viii. Such other relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure Plaintiff demands trial by jury in this action of all issues so triable.

May 13, 2024

Respectfully submitted,

By: _____

Kevin J. Kapusta, Esquire
Florida Bar No. 933856
**KEVIN J. KAPUSTA, P.A.**
Attorney for Plaintiff
9801 Meadowfield Circle
Tampa, FL 33626
Phone: (813)394-8455
kevinkapusta@outlook.com